UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. C-08-568 |
| | § | |
| BENJAMIN GONZALO MENDOZA | § | |

## ORDER DENYING MOTION TO SUPPRESS

On this day came on to be considered Defendant Benjamin Gonzalo Mendoza's motion to suppress certain evidence in the above-styled criminal action (D.E. 14, 17). The Court held a hearing on Defendant's motion to suppress on September 24, 2008. For the reasons set forth below and for the reasons discussed at the September 24, 2008 hearing, Defendant's motion to suppress is hereby DENIED.

### I.   Factual Background

On July 31, 2008, at approximately 11:30 AM, a Tornado Company bus approached the Falfurrias, Texas immigration checkpoint. (9/24/08 Motion to Suppress Hearing).[1] Pursuant to normal procedure, the bus was directed to the secondary inspection area of the checkpoint. Border Patrol Agent Robert Martinez and another Border Patrol Agent conducted immigration inspections of the bus passengers, while Border Patrol Agent Victor Valdez used his service canine to conduct a free-air sniff of the bus baggage compartment. During the course of the free-air sniff, Agent Valdez' service canine alerted to a black suitcase in the baggage compartment. Affixed to the black suitcase was a luggage tag bearing the name "Ben Mendoza." The tag on the luggage indicated that the bag was checked through to Chicago, Illinois. Upon learning of the canine alert, Border Patrol Agent Martinez directed the bus passengers to exit the bus, where

---

[1] Unless otherwise noted, all of the information in the "Background" section of this Order comes from testimony at the September 24, 2008 hearing on Defendant's motion to suppress. As set forth at the hearing, the factual background described above is not the subject of dispute between the United States and the Defendant.

they were to claim their luggage.[2]  As each passenger exited the bus, the passenger had to show Agent Martinez a form of identification.  The Defendant showed Agent Martinez a Texas state identification card bearing the name "Benjamin Gonzalo Mendoza."  All of the luggage on the bus was claimed by the other bus passengers, except for the subject black suitcase.  No one claimed the black suitcase.  Agent Valdez asked Defendant if the black suitcase belonged to him.  Defendant maintained that the black suitcase did not belong to him, although it contained a tag bearing the name "Ben Mendoza."  Agent Valdez then asked Defendant for his bus ticket.  Defendant obliged, giving Agent Valdez a bus ticket to Chicago, Illinois, bearing the passenger name Ben Mendoza, and listing the passenger's ticket number.

The Border Patrol Agents then opened the unclaimed, black suitcase and discovered that, in addition to clothes, it contained bundles of marijuana.  The Agents then arrested Defendant, patted him down, and read him his Miranda rights in his preferred language of English.  The Agents also provided the Defendant with a written copy of his Miranda rights, which the Defendant signed.  This occurred at approximately 11:40 AM.  Defendant indicated to the Border Patrol Agents that he did not wish to answer any questions, thus invoking his right to remain silent.  However, Defendant did not request an attorney.  As soon as Defendant invoked his right to remain silent, the Border Patrol Agents did not ask Defendant any further questions, and the Agents placed Defendant in a holding cell.

Sometime before 12:00 PM on July 31, 2008, Drug Enforcement Agency ("DEA") Task Force Officer Todd Burris was informed of the arrest of Defendant Mendoza at the Falfurrias checkpoint.  Officer Burris and his partner, Charles Bartels, were in the area working on another matter.  Officer Burris and his partner went to lunch and returned to the checkpoint around 1:30 to 2:00 PM.  At that time, Border Patrol Agents had not yet completed their paperwork with

---

[2] The passengers' luggage had been offloaded from the baggage compartment.

respect to the Defendant.  Because of the paperwork delay, Officer Burris and his partner did not make contact with Defendant Mendoza until approximately 3:00 PM on July 31, 2008.  This was over three hours after the Defendant was first arrested by the Border Patrol Agents, invoked his right to silence, and was placed in a holding cell.  Officer Burris and his partner retrieved Defendant from the holding cell and took him to a trailer that the DEA uses to conduct interviews.  Officer Burris and his partner identified themselves to Defendant, indicating that they were from the DEA.  Officer Burris read the Defendant his Miranda rights in the Defendant's preferred language of English, and provided a written form for Defendant to follow along.  Defendant signed the written copy of his Miranda rights, and initialed the box indicating that he was willing to answer questions.  This occurred at approximately 3:03 PM.  Defendant did not make any request for an attorney.  After Defendant indicated that he was willing to answer questions, the DEA Officers questioned Defendant about the black suitcase from the Tornado bus.  Defendant made several incriminating statements during the course of this interview, which he now seeks to suppress.  Of note, at no time during the interview with the DEA Officers did Defendant ever re-invoke his right to remain silent, nor did he ever make any request for an attorney.

## II. Procedural Background

On September 9, 2008, Defendant filed his motion to suppress, seeking to suppress the following:  (1) the statements Defendant made to Officer Burris; and (2) Defendant's bus ticket. (D.E. 14, corrected version D.E. 17).  Specifically, Defendant claims that after he invoked his right to silence to the Border Patrol Agents, that right was not scrupulously honored when the DEA Officers questioned Defendant later in the day.  (D.E. 17, pp. 1-2).  Defendant also claims that the bus ticket "seized from [Defendant's] person" should be suppressed, because it was

seized prior to Defendant's arrest and before he received his Miranda warnings. (Id.). The United States responded to Defendant's motion on September 10, 2008 (D.E. 16). The United States argues that law enforcement officers did scrupulously honor Defendant's initial invocation of his right to silence, and that the DEA Officers' later questioning of Defendant did not violate this right. (Id., pp. 2-4). As noted above, the Court held a hearing on Defendant's motion to suppress on September 24, 2008. At that hearing, the parties argued their various positions and the following persons testified before the Court: Border Patrol Agent Robert Martinez, Border Patrol Agent Victor Valdez, and DEA Task Force Officer Todd Burris. At the hearing, the Court orally DENIED Defendant Mendoza's motion to suppress (D.E. 17). The Court now follows with this written Order detailing the reasons for the Court's denial of Defendant's motion.

### III. Discussion

As noted above, Defendant seeks to suppress (1) the statements Defendant made to DEA Task Force Officer Burris; and (2) the bus ticket that Plaintiff handed over prior to his arrest at the checkpoint. The Court addresses each of these issues in turn.

#### A. Defendant's Statements to Officer Burris

As set forth below, although Defendant initially invoked his right to silence to the Border Patrol Agents, Defendant later voluntarily waived his Miranda rights prior to questioning by the DEA Officers. This questioning took place in a different location, approximately three and a half hours later, and was conducted by personnel from a completely separate agency (the DEA as opposed to the Border Patrol). As detailed below, given the circumstances at hand, Defendant's statements to DEA Task Force Officer Burris and his partner Charles Bartels were lawfully obtained and are thus admissible in this case.

### 1. Waiver of *Miranda* Rights

In <u>Miranda v. Arizona</u>, the Supreme Court held that before a suspect is subjected to custodial interrogation, law enforcement officers must inform the suspect of his right to silence and right to counsel. <u>Miranda v. Arizona</u>, 384 U.S. 436, 472 (1966). The Supreme Court noted, however, that "[t]he defendant may waive effectuation of the rights conveyed in the warnings provided the waiver is made voluntarily, knowingly and intelligently." <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986) (citing <u>Miranda</u>, 384 U.S. at 444); <u>see also</u> <u>United States v. Laury</u>, 985 F.2d 1293, 1315 (5th Cir. 1993) ("Defendants may waive their <u>Miranda</u> rights provided that they waive their rights voluntarily, knowingly, and intelligently"); <u>Colorado v. Spring</u>, 479 U.S. 564, 571 (1987); <u>United States v. Davis</u>, 512 U.S. 452, 458 (1994); <u>Oregon v. Bradshaw</u>, 462 U.S. 1039, 1046-1047 (1983). The Supreme Court held as follows with respect to determining if a suspect's waiver of <u>Miranda</u> rights meets the knowing and voluntary standard:

> The inquiry has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the <u>Miranda</u> rights have been waived.

<u>Moran</u>, 475 U.S. at 421 (internal quotes and citations omitted); <u>see also</u> <u>North Carolina v. Butler</u>, 441 U.S. 369, 374-75 (1979) ("the question of waiver must be determined on the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.") (internal citations omitted).[3]

---

[3] Moreover, the <u>Miranda</u> Court held that "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive" his constitutional rights. <u>Miranda</u>, 384 U.S. at 476.

When a suspect only invokes his right to silence, but does not request an attorney, law enforcement officers will not violate Miranda as long as the suspect's "right to cut off questioning was scrupulously honored." Smith, 894 F.2d at 726 (quoting Michigan v. Mosley, 423 U.S. 96, 104 (1975)); see also Arizona v. Roberson, 486 U.S. 675 (1988). When a suspect invokes his right to silence, law enforcement must immediately terminate questioning of the suspect. See Mosley, 423 U.S. at 104. However, *law enforcement may re-initiate questioning at a later time, so long as they "scrupulously honor" the suspect's invocation of his right to silence.*[4] See id. (emphasis added); Kelly v. Lynaugh, 862 F.2d 1126, 1130 (5th Cir. 1988).

### 2. Law Enforcement Did Not Violate Defendant's Rights

In this case, law enforcement did scrupulously honor the Defendant's invocation of his right to silence to the Border Patrol, and Defendant voluntarily waived his right to silence when later questioned by the DEA.

After he was arrested by the Border Patrol Agents and read his Miranda rights by Border Patrol Agent Valdez, Defendant invoked his right to silence.[5] Border Patrol Agents honored Defendant's invocation of this right, and did not ask any further questions of Defendant Mendoza. Border Patrol Agents placed the Defendant in a holding cell. This all happened between 11:30 AM and 12:00 PM on July 31, 2008. Over three hours later, during which time Defendant had not been asked any questions, DEA Task Force Officer Burris and his partner retrieved Defendant from the holding cell and took him to a new location, a trailer that the DEA uses for interviews. Officer Burris and his partner identified themselves as being from the DEA

---

[4] When the suspect only invokes the right to silence and not the right to counsel, law enforcement may re-initiate questioning at a later time without the suspect himself initiating the contact with law enforcement. See Kelly, 862 F.2d at 1130. In contrast, if the suspect invokes the right to counsel, questioning may not resume without counsel present unless the suspect initiates the contact with law enforcement. See Edwards, 451 U.S. at 485

[5] Unless otherwise noted, the factual background set forth in this Order was established at the September 24, 2008 Motion to Suppress hearing before the Court, and is not a subject of dispute between the Defendant and the United States.

(as opposed to the Border Patrol), and read Defendant fresh <u>Miranda</u> warnings.  After being read his <u>Miranda</u> warnings and being provided with a written advisement of rights, Defendant initialed the box that indicated that he was willing to answer questions at that time.  In this case, the questioners were new, they were from a completely different agency, the questioning took place in a different location, and over three hours had passed since Defendant had previously invoked his right to silence.  Courts have found that a suspect's <u>Miranda</u> rights are not violated under similar facts, where there has been a lapse in time, new officers question the defendant, and the defendant is given fresh <u>Miranda</u> warnings.  <u>See</u>, <u>e.g.</u>, <u>Grooms v. Keeney</u>, 826 F.2d 883, 885 (9th Cir. 1987) (right to silence was scrupulously honored where the suspect received a fresh set of warnings after a four hour break in questioning); <u>Kelly v. Lynaugh</u>, 862 F.2d 1126, 1130 (5th Cir. 1988) (right to silence was scrupulously honored where fresh <u>Miranda</u> warnings were administered, the "interrogations ceased immediately each time [the suspect] Kelly expressed a desire to remain silent ... and the efforts to question Kelly were spread over seven to twelve hours"); <u>West v. Jackson</u>, 92 F.3d 1385, 1403 (5th Cir. 1996) (defendant's <u>Miranda</u> rights were not violated where defendant invoked right to silence, law enforcement terminated questioning and waited thirteen hours before re-interviewing defendant).

Based on the above, given the circumstances of this case, law enforcement officers did scrupulously honor Defendant's initial invocation of his right to silence.  <u>See</u> <u>Kelly</u>, 862 F.2d at 1130.  Further, Defendant later voluntarily waived his right to silence after receipt of fresh <u>Miranda</u> warnings from DEA Task Force Officer Burris.  Accordingly, Defendant's statements were lawfully obtained and are thus admissible in this action.  <u>See</u> <u>id.</u>

### B. Defendant's Bus Ticket

As set forth above, when initially asked whether the subject black suitcase belonged to him, Defendant responded in the negative. Border Patrol Agent Valdez then asked Defendant for his bus ticket, and Defendant handed the ticket over to Agent Valdez. The ticket was a bus ticket to Chicago, Illinois, with the passenger name Ben Mendoza, and listing a passenger ticket number. Agent Valdez testified that the subject black suitcase contained a tag with a ticket number, bearing the name Ben Mendoza, and indicating that the luggage was headed to Chicago, Illinois. Accordingly, the bus ticket would be incriminating evidence against Defendant, because the name on the bag matched the name on Defendant's bus ticket, and because the tag on the bag indicated that the luggage was checked through to Chicago, with Defendant also headed to Chicago.[6] Defendant now argues that his bus ticket should be suppressed as evidence, because the bus ticket was improperly seized prior to Defendant's arrest and prior to the receipt of his Miranda warnings. (Motion to Suppress, pp. 1-2). As set forth below, the Court need not determine whether Defendant's bus ticket was lawfully obtained. This is because, even if the ticket were somehow obtained in violation of Defendant's rights, the ticket is still admissible under the doctrine of inevitable discovery.

Pursuant to the doctrine of "inevitable discovery", the government "must show that the [evidence in question] 'inevitably would have been discovered by lawful means.'" Hudson v. Michigan, 547 U.S. 586, 616 (2006) (citing Nix v. Williams, 467 U.S. 431, 444 (1984)); see also United States v. Zavala, 541 F.3d 562, 579 (5th Cir. 2008) (citing United States v. Lamas, 930

---

[6] Regarding the ticket number, the claim ticket on the suitcase listed the passenger's ticket number as 810707. During the government's opening statement, the government asserted that the ticket number on Defendant's bus ticket matched the ticket number on the luggage tag attached to the black suitcase. (9.24.08 Hearing at 11:17:22; 11:18:15). However, during the evidentiary hearing, the government presented no evidence that the number on the bus ticket matched the number on the luggage tag. Accordingly, the Court's Order does not address the issue of whether the number on Defendant's bus ticket matched the number on the luggage tag. As set forth above, the bus ticket is incriminating against Defendant for other reasons, and the matter of the ticket number is not outcome determinative to Defendant's motion to suppress.

F.2d 1099, 1102 (5th Cir. 1991)) ("The inevitable discovery doctrine asks whether there is a reasonable probability that the evidence in question would have been discovered in the absence of the police misconduct."); United States v. Smith, 2007 WL 4577402, at *4 (S.D. Tex. Dec. 26, 2007) ("The inevitable discovery exception provides that evidence is admissible if the prosecution shows that it would have been discovered in a lawful manner, had the prior illegality leading to its discovery not occurred, by virtue of ordinary investigations, leads already in the officer's possession or customary practices"); Garner v. Cain, 2000 WL 533572, at *6 (E.D. La. May 1, 2000) (pursuant to the inevitable discovery doctrine, "unconstitutionally obtained evidence may be admitted at trial if it would inevitably have been seized by police in a constitutional manner."). "In other words," pursuant to the inevitable discovery doctrine, evidence is admissible if "the evidence would have been found despite, and independent of, [any constitutional] violation." Hudson, 547 U.S. at 617.[7] "The inevitable discovery doctrine is designed to ensure that the prosecution is not put in a worse position simply because of police misconduct." United States v. Doe, 801 F.Supp. 1562, 1577 (E.D. Tex. 1992) (citing Nix, 467 U.S. at 443).

In this case, regardless of whether or not they had seen the bus ticket, the Border Patrol Agents had probable cause to arrest the Defendant. This probable cause was based on the canine alert to the black suitcase, which bore a luggage tag with the name "Ben Mendoza." Upon exiting the bus, Defendant had just shown Agent Martinez his identification, a Texas state

---

[7] Specifically, "[f]or the "'inevitable discovery' exception to the exclusionary rule to apply, the government must prove by a preponderance of the evidence (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial alternative line of investigation at the time of the constitutional violation." United States v. Doe, 801 F.Supp. 1562, 1577-78 (E.D. Tex. 1992) (citing Lamas, 930 F.2d at 1102). As set forth below, these criteria have been met in this case.

identification card with the name "Benjamin Gonzalo Mendoza." Further, prior to Defendant's arrest, the other bus passengers had claimed their luggage, but the Defendant had not claimed any bags. Given these circumstances, most notably Defendant's name matching an almost identical name on the luggage tag, the Border Patrol Agents had more than enough probable cause to arrest the Defendant. Once the Defendant was arrested, the Border Patrol Agents would have found the bus ticket when they searched Defendant's person. Accordingly, the discovery of the bus ticket was "inevitable" following Defendant's arrest, and the Agents had sufficient probable cause to arrest Defendant even without the bus ticket. See, e.g., United States v. McClain, 280 Fed.Appx. 425, 427 (5th Cir. June 6, 2008) (citing United States v. Green, 293 F.3d 855, 857 (5th Cir. 2002)) ("The probable cause for the arrest rendered the subsequent search of [Defendant's] person … reasonable."). The bus ticket is therefore admissible as evidence in this case, regardless of whether the ticket was obtained lawfully by the Border Patrol Agents. See Nix, 467 U.S. at 443-44.

**IV.   Conclusion**

For the reasons set forth above, Defendant's motion to suppress (D.E. 14, 17), seeking to suppress (1) Defendant's statements to DEA Task Force Officer Burris; and (2) Defendant's bus ticket, is hereby DENIED.

SIGNED and ORDERED this 15th day of October, 2008.

_____
Janis Graham Jack
United States District Judge